## EDWARDS et al. v. EDWARDS.
### (No. 790—4790.)

Commission of Appeals of Texas, Section B. June 4, 1927.

Divorce ⬩312—Evidence of mother's unfitness being conflicting, Court of Civil Appeals on reversing order awarding son's custody to grandparents should have remanded case.

In divorce action, where custody of son was awarded to his paternal grandparents, and custody of daughter was awarded to the wife, on appeal from order of custody for the son, Court of Appeals on reversal was not authorized to render final judgment, where evidence as to the wife's moral unfitness was conflicting and raised issue, on which trial court rendered its contrary judgment.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Suit for divorce by W. K. Edwards against Ruth Edwards, in which plaintiff's parents intervened. Judgment granting custody of one child to paternal grandparents was reversed and rendered by the Court of Civil Appeals (288 S. W. 634), and plaintiff and the interveners bring error. Judgments of the district court and Court of Civil Appeals affirmed in part and reversed in part, and cause remanded for new trial.

E. R. Bryan, of Midland, Goldstein & Smith, of El Paso, Beall, Beall & Beall, of Sweetwater, and Smith & Gibson and E. F. Smith, all of Austin, for plaintiffs in error.

H. R. Debenport, of Big Spring, and Wm. E. Loose, of El Paso, for defendant in error.

POWELL, P. J. The nature and result of this case have been admirably stated by the Court of Civil Appeals. See 288 S. W. 634. So far as the appeal is concerned but one issue is involved, and that is a contest between the mother of W. K. Edwards, Jr., born February 23, 1921, and Norma Evelyn Edwards, born May 11, 1922, and their paternal grandparents, over the care and custody of said children. The father and mother of the children were separated, and the father was making no effort to secure custody of his children. The parents of the father, however, alleged that the mother of the children was disqualified and unfit to rear them.

Upon a trial before the district court he awarded the boy to the grandparents and the girl to its mother. When such judgment was rendered, counsel for the mother asked the court to file findings of fact and conclusions of law. He did so. He found that neither the father nor mother of the children "had any means of support except gratuities from their respective relatives."

The other material finding was as follows:

"Third. I find that it is to the best interest of the minor Will Knox Edwards, Jr., to be placed in the care and custody of his grandparents W. P. Edwards and wife; and that, on account of the tender age of the little girl, Norma Evelyn Edwards, it is to her best interests, at present at least, that she be placed in the care and custody of her mother, the defendant herein."

It will be observed that the court made no finding, unless impliedly, as to the moral fitness of the mother to be awarded the custody of her children. He did say that the only means of financial support would be from relatives of their parents. Upon this point the grandparents were shown to be wealthy. They both testified they were fond of the children, and would give them the same financial assistance no matter who might be awarded their custody. So it would seem that they were to have financial support, in any event.

Being dissatisfied with the meager findings of fact aforesaid, counsel for the mother filed a request for additional findings. Among the requested findings are the following:

"First. That the defendant, Ruth Edwards, is a suitable and proper person to have the custody and care of the minor girl, Norma Evelyn Edwards."

"Third. That the defendant, Ruth Edwards, is a suitable and proper person to have the custody and care of the minor, Will Knox Edwards, Jr., and is not disqualified to have such custody and care of said minor."

"Sixth. That the defendant, Ruth Edwards, during her marriage with plaintiff Will Knox Edwards, has not been guilty of cruel treatment, excesses, or outrages of such a nature as to render their living together insupportable."

"Tenth. That the defendant, Ruth Edwards, is a kind and affectionate mother, and is deeply attached to both of her children, and suffers great grief as the result of her separation from her son, Will Knox Edwards, Jr., and that she has never neglected said children or either of them, and has at all times performed the functions of a loving and attentive mother; that

---

⬩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the continued separation of Will Knox Edwards, Jr., from defendant, Ruth Edwards, will continue to grieve her."

But, so far as the record shows, or so far as any one contends, the trial court refused to make aforesaid requested findings, or in any way to enlarge his original findings.

It seems to us that, at this late day, no real controversy can arise as to the law which must govern district courts in awarding the custody of minor children. Perhaps no stronger case was ever written by our Supreme Court than that of Wood v. Deaton, 93 Tex. 243, 54 S. W. 901, quoted at length by the Court of Civil Appeals herein. Less than 30 days ago, this section of the Commission cited that, and other Supreme Court cases, with approval in rendering its decision in the case of Henry Castro v. Rosa Vasquez Castellanos et al., 294 S. W. 525. And it must be assumed, in all reason, that the learned trial court in the case at bar was familiar with this line of decisions which we cited in the Castro Case. And we must assume also that the trial court was endeavoring to award these children under these well-settled rules of law. If his judgment can be harmonized so as to conform to the law, it should be so construed in all fairness. In passing upon this judgment of the trial court, the Court of Civil Appeals says:

"In view of the award of the little girl to the mother, it cannot be assumed the court considered her as laboring under any disqualification to properly discharge her duty to the boy. If the mother was a fit person to care for her daughter, she was by the same token a fit person to care for and rear her son. The trial court seems to have attached some importance to the tender age of the little girl in awarding her custody to the mother. Upon the date of the trial the girl lacked only a few days of being three years old; the boy was only fifteen months older. We can see no reason why this slight difference in the ages of the children should have had bearing upon the issue. Furthermore, upon an examination of the whole evidence we are convinced that it does 'not establish with that certainty which the courts must require that the interest of the child, or of society itself, demands that he should be taken from his mother and continued in the possession of another.'

"It will serve no good purpose to state the evidence disclosed by the record. It is sufficient to say that in the opinion of this court, after full and mature consideration of the same, it fails to show that this mother is disqualified or incompetent to properly discharge her full duty to her son, as well as her daughter; that it is to the best interest of the son that he receive the care and affection which only a mother can give him, and which his mother is fighting to bestow upon him.

"The judgment decreeing the care and custody of the minor, William Knox Edwards, Jr., to the intervenors, is reversed, and here rendered in favor of the appellant. In no other respect is the judgment of the lower court disturbed.

"Reversed and rendered."

The grandparents, plaintiffs in error here, contend that the Court of Civil Appeals exceeded its authority in rendering final judgment; that the extent of its authority was to remand the case, upon reversal, because the evidence as to the mother's moral unfitness was highly conflicting, and, in any event, raised the issue upon which the trial court rendered its contrary judgment. We think this assignment must be sustained.

The Court of Civil Appeals, just prior to its language used in the last preceding quotation, referred to the fact that the Supreme Court, in the Deaton Case, reversed both lower courts, and rendered judgment for the mother of the child there involved. That is true, but the case was governed by findings of fact agreed to by all on appeal. And those findings specifically found that the mother there involved was in every way qualified to have her child. In that case there were some equities in favor of outsiders who had taken the child when the mother was unable to care for it, and under a promise from the mother that they could keep the child. Since these outsiders were also qualified to raise the child, as found by the trial court, these equities were allowed to prevail in both of the lower courts. But the Supreme Court applied the law to the findings of the lower courts that the mother was in every way qualified, and, that being true, she was awarded the child. Therefore there is no analogy between the final result in the Deaton Case and the judgment of the Court of Civil Appeals here, unless it can be said that the trial court, in the case at bar, found this mother qualified to have her son. The Court of Civil Appeals says the trial court must have so found, because it did find that she was qualified to have the little girl, and, if so, she was, in the view of the Court of Civil Appeals, also qualified to have the little boy. With this reasoning, as showing that the trial court impliedly found the mother qualified to care for her son, we cannot agree. The trial court may have erred in thinking that the girl baby's best interest would be subserved in leaving her, temporarily, with her mother, even though the court thought she was morally unfit to have the custody of the older boy. That question is not before us, as the grandparents did not appeal in an effort to take the girl baby from its mother. Therefore we express no opinion as to whether the practical infancy of a child would justify its award, for a while, to a mother who was morally unfit to be awarded the permanent custody of an older child. But the only reasonable construction of the trial court's action, judged positively and negatively, is that he found the mother disqualified to have the custody of her son. Why do we say this?

Any court, in this day and time, must know that, under the law, where a parent

can procure money to meet the needs of the child (as this mother could under the undisputed evidence), the parent is entitled to the child, unless morally unfit. Therefore we would have to assume that the district court ignored the rules of law if he deprived this mother of her son for any other reason than her moral unfitness. It is true, he did not expressly find her unfit. But that is the only reasonable implication arising from his judgment as entered. As already indicated, the fact that, for a while, he, in his discretion, thought it best to leave the girl with the mother, is no indication that he thought her fit as a permanent custodian even of the little girl. He may have intended to remove her before she reached the age where she would likely be influenced by her mother's tendencies.

Consequently, the positive action of the trial court convinces us that he found this mother disqualified for the custody of her son. But that is not all. Counsel for the mother, as already shown, asked the trial court to find, as a fact, that the mother was qualified for the girl and boy. These findings were separately requested. They were both refused by the court in silence. In all reason, this negative action can only mean that he had intended to find her disqualified to have her boy at all, and that he had also found her disqualified for the permanent custody of her little girl. Otherwise why should he have refused, as requested, to find that she was qualified to have the little girl? In all reason, the court would have at least given the mother that much comfort if he felt he could do so. So his award of the girl to her must have been for the very reason he himself gave in rendering judgment.

If we are correct in our view that the trial court must have found the mother disqualified to have her son, which is the only question on appeal, then, as conceded by all counsel in the case, the Court of Civil Appeals was not authorized to overturn this finding of fact and render final judgment to the contrary, if there was any evidence in the record sustaining the finding by the trial court. This is well settled in the case of Patrick v. Smith, 90 Tex. 267, 38 S. W. 17, and numerous later decisions. And, in this very connection, counsel on both sides, in oral argument, admitted that there was conflicting evidence in this case relating to several instances of alleged immoral conduct on the part of this mother. But counsel for the mother say that, even if these charges be true, in the view of the trial court, they are not sufficiently serious, as a matter of law, to show her disqualification. In other words, it is contended that, if she be guilty of these acts of alleged impropriety, the law itself would say that she was not disqualified to have the care of her children. With this last contention we cannot agree.

As we read this record, there is much evidence, clearly admissible, which, if believed, would be sufficient to raise the issue of her unfitness. As stated by the Court of Civil Appeals, we think it is preferable, bearing in mind the best interest of all the parties, including these children of tender years whose life is largely before them, to refrain from filling the reports with the details of these charges. Suffice it to say that, in our judgment, we do not believe that all reasonable minds would agree that this mother is morally fit to rear her son, if what some of these witnesses say is true. In other words, her fitness is a fact issue, and there is some evidence to support the trial court's finding of her disqualification. That being true, the Court of Civil Appeals should have remanded the case, upon reversal. They had the right to remand it, because, in their judgment, it was against the weight of the testimony, but they could not legally render judgment as they did.

But, even if the Court of Civil Appeals herein be correct in its view that, if the mother was qualified to have the girl, she was equally qualified to have the boy, we would still have a situation which would require a remand of the case, because, in such a situation, the action of the trial court being irreconcilably in conflict, it would follow that he had not exercised his right to originally pass upon this fact issue, for it would be equally as plausible to say that, if the mother was disqualified to have her boy, she was disqualified to have the girl. In other words, if the trial court had found the mother qualified, he would not have awarded the son as he did. On the other hand, if he had found her disqualified, he would not have awarded the girl as he did. These observations are inevitable, if the Court of Civil Appeals is correct in its view that moral fitness of the parent affects alike the best interests of all children of anything like the same age. Under this theory of the Court of Civil Appeals, as applied to the judgment entered by the trial court, he made no finding either as to the fitness or unfitness of this mother. In such a situation the Court of Civil Appeals did not have the right to make such a finding in the first instance. Chief Justice Gaines, in the case of Patrick v. Smith, supra, said that "it is not the province of the Court of Civil Appeals to determine a question of fact in the first instance." Since no judgment can be entered in this case until such an issue is determined, it would have to be remanded to the trial court so that it might exercise its original jurisdiction and rectify its failure to do so on the former trial.

We had this latter situation before us in the Castro Case, supra. In that case the trial court had but one child in controversy. The father wanted his son, who was in the

custody of its maternal grandparents. The trial court gave this one child to the father 10 days each month and to the grandparents 20 days. The Court of Civil Appeals at San Antonio, 289 S. W. 104, said that, if the grandparents were qualified to have the child 20 days each month, they were qualified to have him all the time. Of course, the father contended that, if he was qualified to have the child one-third of the time, he was qualified to have him all of it. The conflicting situation in the Castro Case was like the one in the case at bar, if the judgment in the latter case is to be construed as the Court of Civil Appeals herein has construed it. In the Castro Case one child was given, part time, to a father and its grandparents. In the instant case one child is given to the mother and the other to its grandparents. In each case the Court of Civil Appeals says that there should have been no division, whether it be of time or children. In each case the Court of Civil Appeals reversed the district court and rendered a contrary judgment.

In the Castro Case we held, in an opinion by Judge Short, that the trial court had evidently not passed on the qualification of the father; that, if he had done so, he would have awarded the child to the father all the time or none of the time. And, under the view that this fact issue must first be determined by the trial court, we recommended that said cause be remanded, and the Supreme Court so ordered. Therefore, under any theory of the action of the trial court herein with reference to this all important fact question, as construed by the Court of Civil Appeals or as construed by us, the Court of Civil Appeals erred in rendering final judgment herein. The cause should have been remanded.

We do not wish to be understood as expressing any opinion as to the fitness or unfitness of this mother to rear either or both of her children. Where the evidence is conflicting, as is the case here, no such fact issue can be determined by us. We merely hold that there is evidence raising the issue as to her moral unfitness for the task in hand.

Plaintiffs in error contend that the Court of Civil Appeals never acquired jurisdiction of this case, and should have dismissed it. That court has discussed this question. It decided that it did acquire jurisdiction, and we approve their holding. It is not necessary for us to add to what that court has said upon this point.

For the reasons stated, we recommend that the judgments of the district court and Court of Civil Appeals as to W. K. Edwards, Jr., be reversed, and the cause remanded to the former for another trial not inconsistent herewith. We further recommend that the judgments of both of said courts as to Norma Evelyn Edwards be affirmed, since there is no appeal therefrom as to her.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals affirmed as to Norma Evelyn Edwards, and reversed and cause remanded as to W. K. Edwards, Jr., as recommended by the Commission of Appeals.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.